We have one case on this 930 calendar, I assume all the parties are here, and we have Judge Stroni on the phone. Judge Stroni, are you there? I am, Judge Pooler. Great, thank you. The case is Inouye Orrin Anderson v. Credit One Bank, Inouye means it's a bankruptcy, and this was assigned to the panel of Stroni, Pooler, and Ramos long ago, I don't remember exactly when. We didn't take it on submission, I guess because we had all done some work and thought it was an interesting case. So let's move on, we'll hear from the appellant. Thank you, Your Honor, may it please the Court, Noah Levine for Credit One Bank. The question on this appeal is whether Congress intended that the particular claim that plaintiff has brought here must be decided by a bankruptcy court instead of sent to arbitration, and we believe the answer is no, for at least three reasons. The first is that arbitration of plaintiff's claim here doesn't present any of the conflicts with the bankruptcy code objectives of centralization of claims against the estate that has previously led this Court to affirm denials of arbitration motions. Second, plaintiff's argument that the fresh start is fundamental to the bankruptcy code provides no basis for denying an arbitration motion because the Supreme Court has said repeatedly that even important rights may be arbitrated. And third, plaintiff's argument that the bankruptcy court cannot be stripped of its power to enforce its discharge order directly contradicts the particular theory of the case under which he is litigating in the bankruptcy court and which the bankruptcy court has endorsed. So on my first point— How do you make that theory to be, and how has the bankruptcy court endorsed it? So this is brought as a class action. You won't hear my opponent say, or if you ask his counsel here today, that the bankruptcy code imposes any impediment to a bankruptcy court enforcing discharge orders entered by other courts. That's because it's a class action. In the Haines decision, you've heard, you've seen in the briefs, as my colleague has explained on the other side, that there are six cases proceeding in the bankruptcy court against banks, all represented by the same plaintiff's counsel. All on this issue. Pardon? All on this issue. And in the Haines case, which we cite at pages 13 and 14 of our brief, Judge Drain explains in that opinion, at page eight, it's pages seven to nine, but particularly at page eight, that what he's tasked with doing in these cases is interpreting and applying the text of section 524A2, the statutory discharge injunction. The order, the discharge order doesn't matter. As he explains, he doesn't even review discharge orders before he enters them. Under section 727A of the bankruptcy code, the bankruptcy court must enter a discharge order once certain criteria are satisfied, and then section 524A2 of the bankruptcy code prescribes the injunctive effect. As Judge Drain said, the clerk of the court issues those orders as a matter of course in his courtroom and in courtrooms across the nation. So under this court's decision in Hill, where you said that the automatic stay wasn't so much like an injunction, that it requires the unique expertise of the bankruptcy court to enforce, to interpret and enforce its own order, that's exactly true here. That is the theory that Judge Drain has said applies here. The reason that he can entertain a class action is because he's applying the text of section 524A2 in bankruptcies across the nation if a class were to be certified. And under Hill, what Hill says is that if you don't need the expertise of the bankruptcy court to enforce its own order, for example, like in a large reorganization or liquidation plan, like in the Lehman Brothers case that Your Honor decided at the district court level, or the reorganization in the U.S. Lines case, those are really complicated orders that come out of bankruptcy courts that require all of the expertise and all of the centralization of disputes of claims against an estate. But that's not the case here. But the fact that it's easy enough to do doesn't mean that it's not fundamental or central to the bankruptcy code. Is that right? And isn't that what Judge Drain was saying? I don't disagree at all about importance to the bankruptcy code. The discharge is important to the bankruptcy code, but that doesn't answer the question that's posed by the Supreme Court precedent in this area. The rights under the Sherman Act, the rights under the Age Discrimination Employment Act, the rights under the Securities Act of 1933 and the Securities Exchange Act of 1934, RICO, those are all important rights. What the Supreme Court has said is you can't assume that an arbitration isn't going to be able to enforce those rights. So let's look specifically at the bankruptcy code arbitration jurisprudence of this court. That's why you ask, as a legal matter, is there an inherent conflict between the purposes of the bankruptcy code and arbitration? And you can't say that that conflict exists just because a right is important. You have to ask, why would arbitration jeopardize that right? And there is no explanation. My opponent's argument stops with the right is fundamental. The bankruptcy court actually tried to make a couple of— Can I ask a question? Oh, yes. I'm sorry, Judge Droney. Go ahead. That is this. You seem to be saying that you don't really need the expertise of the bankruptcy judge to enforce the injunction that's part of the discharge in these cases. But then you say the class action allegations make it very different from the typical enforcement of the injunction in the discharge order. Are those inconsistent positions, or why is it that the class action allegations make such a difference here? I hope that's not what you hear me saying. I don't think it makes any difference how this case is brought. When you enforce a discharge order, you're enforcing Section 524A2 of the code. In Hill, you said, this court said, the fact that a case is brought as a class action matters. It demonstrates that there's no connection between the particular claim that's being brought and the underlying bankruptcy case. The reason we say the class action is important here is it demonstrates that their main theory, that you would be stripping bankruptcy courts of their power to enforce their own orders, can't hold water. In order to certify a class action, you necessarily have to strip bankruptcy courts nationwide of their power to enforce their discharges. And that's why I don't believe that my opponent will say the bankruptcy code itself, which is what the Supreme Court precedent asks us to focus on, is let's look at the statute. Is there a contrary congressional command? They will not say that the bankruptcy code poses an impediment to one bankruptcy judge enforcing a different bankruptcy judge's order. Indeed, Section 1334B that gives jurisdiction is concurrent jurisdiction. State courts can hear these claims if they want. That's also a point that was made in Hill, that because there's no exclusive jurisdiction in the bankruptcy court, this is not something that you can say Congress meant to be exclusively decided by the bankruptcy court. I was also curious about this concurrent jurisdiction argument. It seems as if some places you're saying it's concurrent between the district court and the bankruptcy court, and some places it's the federal courts and the state courts. And if it's the latter, what is the concurrent jurisdiction of state courts to enforce the injunctions embedded in discharge orders? How does that work? So the way it would work is that if there were a claim brought in state court, you could certainly interpose the discharge junction as affirmative defense if that's where you wanted to litigate it. You don't have to. You can come back to the bankruptcy court, or if you have an agreement to arbitrate, you can do it there. Our point, this is obviously not our main point, but it is another point in which this case is on all fours with Hill. This is a case, it's a dispute between two people, it's not a dispute between thousands of claimants. It comes after the bankruptcy case is over, has no effect on the estate, it's brought as a class action, and as our opponents, and as Judge Drain says himself, all it requires is the interpretation of a statute here, not the interpretation of a junction. The injunction continues, does it not? Pardon? I mean, even though the bankruptcy has concluded, you can't then go back and then try to collect the monies that were once owed and that were discharged in bankruptcy. Of course not. That's what the discharge says, and Section 524 is what says that. It says you may not continue to attempt to collect a debt. Doesn't this make this case different than Hill? Than Hill? No, I don't think it does. I think what you're focusing on is the fresh start language there, saying that they did not require the protection of the fresh start anymore, but I don't think this court says anywhere in Hill that the converse is true, that just because a fresh start is at issue, arbitration is never possible. That would contradict Supreme Court. It's also the automatic stay provisions, which were concluded. Once the discharge was granted, no one cared anymore about the automatic stay. That was in the past. Isn't that a distinguishing feature of this case in Hill? That is a factual distinction. It's not one that I think has any legal relevance. And I would point you to Judge Drain's decision, in the Haynes case again. Look at page 8. He actually equates the automatic stay provision, 362H, and 524. He says they are similar statutory injunctions, neither of which have to be enforced by the bankruptcy court that heard the case. If that's true... But Hill itself said that there may be a difference here if this were a discharge case. Isn't that right? Isn't there some language in Hill about that? No. What Hill does is it says that there are three purposes of the automatic stay. One of them is that it gives a person a fresh start. The other is it helps preserve the assets of the state. And the other is that it helps to centralize all claims on the estate in one jurisdiction. Then this court marched through all of those and showed why arbitration of the automatic stay would not jeopardize any of those. In this case, it may be that the fresh start is important, maybe even fundamental. But you need to have a reason why would arbitration of that claim jeopardize it. Why can't an arbitrator hear that claim? There's no answer to that in the briefs in this case. And that's what the Supreme Court and your cases on bankruptcy and arbitration say you have to do. You have to identify the conflict between an objective of the bankruptcy code, looking to the text, legislative history, or purposes. And then there has to be an undertaking to make a particularized inquiry into the nature of the claim and the specific facts of the bankruptcy case. There's none of that in our opponent's argument. The argument is that Section 524 claims are per se not arbitral. And I knew you would say that. Thank you, Judge. You've exceeded your time, but we asked a lot of questions. You have three minutes for rebuttal. Now we'll hear the answer to the question. Thank you, Your Honor. Let me first answer the question that was posed by, I think, Judge Droney about state courts having concurrent jurisdiction. They do not. You cannot enforce a 524 discharge order in a state court. You can raise it, as Mr. Levine says, as an affirmative defense, and that has been true since the founding of the Republic. But as our amicus point out, Congress finally realized that you need to have the jurisdiction of the federal court to enforce a 524 order. If I'm being harassed by a creditor, I have a discharge injunction, and I'm being harassed by a creditor on a collection matter, the only place I can go to stop that collection, or in this case, the only place Mr. Anderson could go to stop the erroneous credit reporting was back to federal court and back to a bankruptcy judge. So there is not concurrent jurisdiction. Can you spend 10 seconds, just for my benefit, and tell me how it is that the bank's failure to change that designation on its records is violative of the discharge order? Yes. Judge Drain has found, and several other judges have found around the country, that placing a charge off on a credit report is a derogatory indication that indicates to the person that the debt is still due an owing. It's incorrect, because a charge off indicates the debt is still due an owing when it's been discharged, and it affects both the credit score and the ability of a person to obtain credit. For example, we — It doesn't indicate that it's been discharged. It indicates that it's been sold and is still alive. Exactly. That's the charge off — exactly. The charge off — what Credit One insisted on doing was, when it sold a debt, it put on the credit report, charged off, sold, transferred, zero balance. That's an indication to the world that the debt is still due an owing and can be collected, and is a derogatory indication that affects a person's ability to get credit. For example, in the bankruptcy court, we submitted the affidavit of an expert who said, you cannot get a mortgage with a charge off. So why — but I understand that Credit One is not interested in collecting this, actually, from what they say here and in their papers. Is there any sane reason why they wouldn't remove this indication? Yeah, there's a very sane reason, and Judge Drain has alluded to it several times. It has a coercive effect upon a person who has been discharged to pay a discharge debt, and in fact, that occurs. And the creditor — Does that run counter to the whole philosophy of discharge? Absolutely, which is why Judge Drain said it's an attempt to collect a debt. It's a lying in wait. A creditor who allows a charge off to stay on a credit report, knowing that the debt has been discharged, and refusing to correct it to put included in bankruptcy, which is the correct designation, is hoping that the person will eventually pay the debt. And the people who buy the debt from Credit One and Chase and Bank of America and all the other defendants value the debts higher because, even though they've been discharged in bankruptcy, they are still listed as collectible and have the coercive effect upon a debtor. That's why this is so coercive and so deleterious to the class. How is your class defined? The class is defined as all individuals who have been discharged in bankruptcy and their debt as charge off rather than included in bankruptcy, and a credit report has been issued with that erroneous information on it. And that's a nationwide class? We ask for a nationwide class. And the fact that Judge Drain has said — which is not an issue before this Court — Judge Drain has said, under 105 of the code, I have the ability to enforce other bankruptcy judges' injunctions. But let's be clear. It's a contempt proceeding. It's — the orders that Judge Drain is enforcing are injunction orders. The order — if you look at the order in the record, it says all creditors are hereby enjoined from enforcing this debt. And what they're suggesting is that — and no other court has ever held this — that a arbitrator, a private individual, can be vested with the authority to enforce the integrity of the court. No — in no other areas has that happened. No one can suggest — Let me ask you about that. They've made an argument that the arbitration — proceeding to arbitration of what might be a violation of the discharge and the injunction really has no effect on the fresh start. What difference does it make? Here he had to file a motion to reopen the bankruptcy. There were proceedings. There was discovery. How is it really different if instead he was forced to proceed in arbitration as to the resolution of this issue? Imagine if you will, Judge, that you're a creditor who has to appear. You're credit one and you have thousands of bankruptcies and you have — you appear — you have claims in bankruptcy courts and a discharge injunction has been entered. And you know that if you are going to violate that discharge order, you're going to be back in front of bankruptcy court with a contempt citation and a sanction from the court. Now imagine that instead of that, you invoke your arbitration clause, which you have in every — with every single customer, and you say, we're going to go to AAA to an arbitrator that I have a choice in choosing. How — what — the effect on the ability of the court to enforce the integrity of its orders is destroyed. You have destroyed — How does it affect the debtor, though? Oh, the debtor has to — the debtor, first of all, has to pay a fee to go to an arbitrator. The debtor has to go through arbitration. If he wins or she wins, they now have to go to bankruptcy court to enforce that order. They have to take this two-step process because an arbitrator can't impose sanction. An arbitrator can fine somebody, but the arbitrator can't collect a judgment. The bankruptcy court has to collect a judgment. The bankruptcy court has to enforce a sanction. So instead — and if you have — if you have — excuse me — if you have five creditors who have violated your discharge order, you have to bring five separate arbitrations in five different places, choose five different arbitrators, and enforce every single one of them in this court instead of — if creditors are harassing you, you walk in front of Judge Drain and you say, I have a discharge order and they are seeking to collect. And Judge Drain, who sees this every single day and adjudicates this issue every single day, can evaluate what kind of sanction is appropriate. It's not just interpreting 524, as Mr. Levine says. It's what is the proper remedy to enforce the integrity of the court and to make sure these debtors are not harassed by creditors. Credit One, Chase, all these other creditors have hundreds of thousands of cases. Can you imagine the difference if they now know that when they violate the discharge order, they don't have to go back in front of a bankruptcy judge but go to private arbitration? Can I ask you about the class action aspect, too? In Hill, we said that that might — that might be relevant as to whether the case should stay in bankruptcy court. Does the — what's the effect of the class action allegations here? I think, actually, the fact that there's a class action here counsels in favor of having the adjudication in front of the judge rather than the arbitrator. We're talking about Judge Drain deciding the fate of literally millions of people in several hundred thousand for Credit One, over a million for Chase, several hundred thousand for the other defendants, and he's — and he's going to make a decision as to whether including a charge off on a credit report violates the discharge order. And instead, all the creditors, for obvious reasons, say, no, no, no, Judge Drain, you shouldn't decide that, and you — your honors, the Second Circuit shouldn't weigh in on that. That all should go to millions of different private arbitrators, all of whom are going to make a private decision whether that violates the discharge order. That's ridiculous. But aren't we required to make an individualized analysis of each of these claims to determine whether or not it's appropriate for the Bankruptcy Court to retain jurisdiction? Yeah. I think in each — this court has said you look at the facts of each individual case and you give due deference to the exercise of discretion, which my adversary doesn't even mention, in deciding whether sending to arbitration adversely affects the policies of the Bankruptcy Court. That's exactly what Judge Drain did. That's exactly what Judge Roman did. Look at the facts of this particular case, the particular issues in this case. What we have here is a 524. Unlike Hill, the three — the issue in Hill was the bankruptcy was over. We're talking about a stay. The person got their money back. And in that — in the unique facts of that case, the court said, you know, arbitrator can decide whether you — the $54, $150 charge was appropriate. Here we're in the — we're in the critical point. We're in the critical point of the bankruptcy case. The most important, as Judge Drain said, the most important aspect of bankruptcy is the discharge, is the fresh start. And he eloquently talked about all the people who have to go through the laborious process in order to get the fresh start. So when is the fresh start most important? After the bankruptcy. 524 always comes into play after the bankruptcy. And in that critical time period is when these defendants have violated the discharge injunction. So unlike Hill, we are in the critical period that the provision that was enacted by Congress has its most important effect. The automatic stay was over in Hill. Counsel, I'm trying to understand why Credit One just wouldn't remove this. And listening to what your answer to my earlier question, it seems to be that the debt is more valuable to sell if they continue this on the credit report? Absolutely. So is that the motivation? Well, Your Honor, Judge Drain — we've had probably 15 hearings on the six different cases in front of Judge Drain. And in every single hearing, Judge Drain asks the question, why do you continue to do this? And it is, in fact, the case that several banks during the proceedings voluntarily agreed to stop doing this. Credit One waited until the very end when the judge was about to hold them in default for discovery violations and for lying to the court. They finally decided at that point in time that they would also do that. And they've now entered into an injunction in this case in the court. And tomorrow, we have a hearing on certification of the class in this case. But Credit One, until the very end, until they're about to be held in default, refused to make the change. So they're not doing it anymore going forward? They've now entered an injunction saying they will not do it anymore going forward. And the question now before the court is, what's the appropriate remedy? Should there be a sanction for Credit One's continual refusal for a number of years to correct these trade lines when they knew that Judge Drain had held back in 2007 that this was a violation of 524? So in conclusion, Your Honors, no private party can divest the court of its ability to enforce its own orders. And when Congress passed the Arbitration Act in the 1920s, no one in Congress intended for private parties, by agreement, to say we're going to divest the court of ability to impose contempt to enforce its own orders in this case. This case involves the integrity of the bankruptcy system and the ability of bankruptcy judges to enforce their orders. If you take that away from them, you've changed bankruptcy procedure forever. Thank you. Thank you, counsel. Mr. Levine, you've reserved three minutes for rebuttal. I'd like to make three points. Did you stop doing this? Credit One has, and I'm glad he said that. I'll start with that point. In Hill, when the arbitration motion was heard in the lower court, everything happened started during the bankruptcy. By the time it made it to this court, there had been a discharge. You take the facts as it was here. Just like in Hill, the question that you asked Judge Droney, we didn't need, you know, anything anymore. We set in a fresh start there. The credit reporting's been changed on Mr. Anderson. Just as in Hill, he no longer needs the protection of the fresh start from Credit One. But on the merits, I strongly dispute the merits. There are reasons why Credit One reported the way it did and why they strongly dispute that there is any inaccuracy. But on that point, as you said, Judge Ramos, you take the particularized claim in the case and you look at the facts, and I strongly disagree that Judge Drain said that Section 105 gives him power to enforce discharge orders from the other courts. Look at page 9 of the decision we cite at pages 13 and 15, and I'll read it to you. He says, there should be no issue here either that Section 105A is properly exercisable to enforce the discharge under Sections 524A and 727 of the Bankruptcy Code. He notes that it is not a license to enter his equity power with respect to those other courts. But he says, but here there are, that's italicized, such specific provisions. Sections 524A2 and 727. The particular theory of this case matters. The Supreme Court has said over and over again that arbitrators can decide statutory rights. This is not the type of complicated, multi-party, estate-specific claim that you need the bankruptcy court to be deciding. This is a two-party dispute about whether credit reporting constituted an act to collect a debt, which we strongly dispute that it did. And that an arbitrator can decide. Are the plaintiffs below seeking sanctions for the violation of the discharge order? And if so, is that something an arbitrator can grant? They are and they can. The arbitrator can give anything that can be given under law. The arbitrator can give injunctive relief. The arbitrator can give anything that can be given under law. There is no reason why they cannot ask the arbitrator for that. We have not taken any remedies off the table in the arbitration agreement whatsoever. The last point I wanted to address was discretion, so that I said nothing about it. There's a reason I said nothing about it. Starting in U.S. lines and through every one of this Court's cases about bankruptcy and arbitration, you said this is a mixed question of law and fact. The legal questions are de novo. Fact is reviewed on clear error. There are no fact findings that are being defended by the opponents here. There is nothing factually that was said in the record about why arbitration can't proceed here or why arbitration of this claim would seriously jeopardize the fundamentality of the discharge injunction in Mr. Anderson's case. There were a lot of arguments made about whether this should be done as a class action or otherwise. The Supreme Court has been very firm on that ground and said that is not a ground for refusing arbitration. If people choose to have simpler procedures through arbitration because they want to avoid the procedural morass of class actions, they can do that. And as they have said in Judge Drain's Court, if they're seeking a contempt-like sanction, it's not contempt and you can read their red brief, it says it's an action that is governed by the standards of contempt, they can seek reasonable attorney's fees, which Your Honor, Judge Pooler, in your concurring in the denial of rehearing in Bonk and Italian Colors, you said that those types of fee-shifting provisions can actually ensure that people get their relief. They can seek that in the arbitration as well. Can you spend 10 seconds and explain this to me? Is there a market for these charge-offs for debts that have been discharged in bankruptcy? There is a market for selling charged-off debt. There hasn't been any proof, as far as I'm aware, anywhere in the bankruptcy court yet. Only hypothetical assumptions about whether people would pay more for debt because they think that the person who's selling it is not going to update it to show a bankruptcy discharge. I think that all the debt buyers would probably say when hailed into court that they don't want to collect bankrupt debt, they only want to collect discharge debt. And if you want to ask about the merits, the point here is that the federal banking agency said that when you sell a debt, all you do is you report that you sold it and you say no more. The fact that it is charged off doesn't say that it's still owing. It also doesn't say that it's not still owing. It just says that it has been charged off. It is no longer a profit. It doesn't say that it's still not owing. Well, it says that $0 is owed. And unless somebody else is reporting the debt is owed, we are into the world of hypotheticals as do people view that trade line as showing the debt is still owing? Maybe. They say that they have evidence that's so. We strongly dispute all this. The fact that there are merits disputes has absolutely nothing to do with the inquiry under the Supreme Court's cases under the Federal Arbitration Act or this Court's cases. But you have agreed not to include this in future reports. Is that correct? I believe that that's correct. The stipulation is in the record, so I'll defer to exactly what the stipulation says. I am not counsel in the bankruptcy court, and so I don't want to misstate anything that the stipulation says. All right. Thank you both. Very interesting case. We'll reserve decision. And now this Court will adjourn for 10 minutes. We have a full calendar that begins at 10. Thank you. Thank you. Thank you.